# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERNON TOLBERT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 09 C 2135 |
| ) | |
| ) | Judge Ronald A. Guzmán |
| DONALD GAETZ, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Vernon Tolbert's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 that seeks to vacate his conviction for first-degree murder. For the reasons provided in this Memorandum Opinion and Order, the Court denies the petition.

## Facts

In 2002, Tolbert was convicted of first-degree murder committed by personally discharging a firearm. (Gov't Ex. A, *People v. Tolbert*, No. 1-02-3514, at 1, 7 (Ill. App. Ct. Oct. 29, 2004).) The trial court sentenced him to sixty-five years in prison: forty years for first-degree murder and twenty-five years for Tolbert's personally firing a gun to commit the murder. (*Id.*)

On August 27, 2000, around 1:00 a.m., Jesse Montgomery went to Brother's Palace, a club, with his family and some friends. Tolbert went to his sister's birthday party at the same club. At around 3:00 a.m., a man spoke to Jesse briefly while he stood near the dance floor. The

man then shot Jesse, and Jesse died.  Tolbert and many others ran from the club after the shooting.

Police spoke with the people who remained at the scene, mostly Jesse's family and friends.  Later that day, police showed an array of photographs to several of them.  After two of them positively identified Tolbert's photograph as being one of the men who shot Jesse, and another made a tentative identification of Tolbert, the police obtained a warrant for Tolbert's arrest.

On June 23, 2001, Tolbert walked into a police station and told an officer that he heard that a warrant had been issued for his arrest.  The officer arrested Tolbert.  Several eyewitnesses identified Tolbert in a lineup as the man who shot Jesse ("June 2001 lineup").  A grand jury indicted defendant on a charge of first-degree murder committed by personally discharging a firearm.

At trial, the Brother's Palace's bouncer testified that he frisked all of the men who entered the club on the night of the murder.  He saw Tolbert enter the club three different times that night, and the third time he arrived after changing clothes.  According to the bouncer, Tolbert wore bulky jogging outfits each time, but in different colors.  The bouncer, who weighed 235 pounds, described defendant as having a build similar to his own.  After the bouncer heard the gunshot, the bouncer saw Tolbert run out of the club carrying a gun.

Kimberly Montgomery, Jesse's niece, testified that she went to the club with Jesse on August 27, 2000.  After 2:30 a.m., when Jesse was talking to his friend Tracey Foreman, Montgomery saw Tolbert go over and talk to Jesse.  Montgomery testified that defendant wore black pants, a black sweater vest with a white design, a white shirt and a baseball cap.  She guessed that Tolbert was six feet, two inches tall and weighed 150 pounds.  She thought that she

had seen him once or twice before in the neighborhood. Montgomery testified that LaDonna Lumpkin, the mother of Jesse's children, went up to talk to Jesse, and she had words with Foreman. Montgomery took Foreman away from Lumpkin, Jesse and Tolbert briefly, but Foreman went right back to Jesse and positioned herself directly between Tolbert and Jesse. Later that day, she positively identified Tolbert in a photo array that police showed her. She also positively identified Tolbert as the shooter in June 2001 lineup. During the trial, the defense counsel highlighted the inconsistencies between Montgomery's identification of Tolbert as the shooter and her prior statement to the police that she knew the shooter as "Otis" and that he "hangs at Harding and Chicago."

Foreman described the same confrontations that Montgomery described. She corroborated Montgomery's description of the man who shot Jesse and the clothes that he wore, except that Foreman did not remember a baseball cap and she guessed that he weighed 170 pounds. She stated that when Foreman came between Tolbert and Jesse, she grabbed Jesse's arm to take him to a place where she could talk to him. She testified that Tolbert's hand hit her as he shot Jesse and she ran out of the club to a nearby police car. Although Foreman did not positively identify any photo in the photo array as being a photo of the shooter, she explained that she told the officers that the photo of Tolbert looked like the shooter, but the person in the photo looked younger than the shooter. She readily picked defendant as the shooter from the June 2001 lineup.

Lumpkin further corroborated Montgomery's testimony. Lumpkin, who had never seen the shooter before that night, testified that he wore black pants and a black-and-white sweater vest, stood six feet and three inches tall and weighed 175 pounds. She stated that she could not ascertain the shooter's complexion because it was dark in the club. Although she did not

3

identify Tolbert as the shooter in the photo array, she positively identified him in the June 2001 lineup.

Marvin Johnson testified that he knew Tolbert from gambling in the neighborhood. Johnson also was at the club on the night of the shooting and saw Tolbert talk to Jesse. A few minutes later, Johnson saw Tolbert knock Foreman down as he shot Jesse. Johnson identified Tolbert as the shooter in the photo array and again identified him in the June 2001 lineup.

Four defense witnesses testified that they sat with Tolbert in the club on the night of the shooting. They swore that Tolbert wore a very distinctive burgundy suit and that Tolbert did not shoot Jesse. According to Tolbert's witnesses, more than 100 people packed the club at the time of the shooting. The witnesses for the prosecution estimated that there was a crowd of twenty-five to thirty-five people at the time of the shooting.

Tolbert asserts the following claims in his original and his amended habeas petition:

(1) his warrantless arrest was unlawful and the state courts denied him an opportunity to litigate his Fourth and Fourteenth Amendment claims fully and fairly;

(2) he was denied his Sixth Amendment right to counsel at the police station lineup and the lineup violated his Fourteenth Amendment right to due process;

(3) his counsel provided ineffective assistance because he was not present during the police station lineup;

(4) his trial counsel provided ineffective assistance for failing to move to quash the warrantless arrest and suppress the evidence based on the arrest;

(5) his post-trial counsel provided ineffective assistance in failing to address trial counsel's ineffective assistance based on the failure to move to quash arrest and suppress evidence based on the arrest;

(6) his trial and post-trial counsel provided ineffective assistance because they failed to move to dismiss the murder charge based on irregularities in the felony complaint;

(7) the State knowingly presented the false testimony of Officers Carrizal and Wolverton; and

(8) his appellate counsel on direct appeal was ineffective for failing to raise the above-noted issues.

## Discussion

The Court can reach the merits of Tolbert's claims only if he fairly presented them to the state courts for resolution and exhausted all available state-court remedies. *See Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Tolbert exhausted his state-court remedies only if he gave "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "[F]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted to that court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

Further, a federal court is precluded from reviewing a claim if the state court disposed of it by "rest[ing] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.*

Respondent argues that all of Tolbert's habeas claims are procedurally defaulted. The Court agrees and addresses each claim in turn.

Claim 1, *i.e.*, Tolbert's warrantless arrest was unlawful and the state courts denied him a fair opportunity to litigate his Fourth and Fourteenth Amendment claims, is barred because the state appellate court disposed of this claim on an independent and adequate state law ground. The appellate court held that, under state law, Tolbert had forfeited this issue because he failed to raise it on direct appeal. (Ex. EE, *People v. Tolbert*, No. 1-05-2914, at 7, 10 (Ill. App. Ct. Nov. 7, 2008).) For the same reason, Claims 2, 3, 4, 5 and 7, *i.e.*, Tolbert was denied his Sixth Amendment right to counsel at the police station lineup and the lineup violated the Fourteenth Amendment, his counsel was ineffective because he was not present during the police station lineup, his trial counsel was ineffective because he failed to move to quash the warrantless arrest and suppress the evidence based on the arrest, his post-trial counsel was ineffective because he failed to address trial counsel's failure to move to quash the arrest and suppress evidence and the State knowingly presented the false testimony of Officers Carrizal and Wolverton, are also barred. (*Id.* at 7, 9-10.) With regard to Claims 1-5 and 7, the state appellate court clearly and expressly relied on forfeiture as the basis of its ruling and held that nothing prevented Tolbert from raising the issues on direct appeal. (*Id.*) Accordingly, this Court is precluded from reviewing these claims.

Claim 6, *i.e.*, his trial and post-trial counsel provided ineffective assistance of counsel because they failed to move to dismiss the murder charge based on irregularities in the felony complaint, is procedurally barred because Tolbert did not raise this claim at any point during the state court proceedings prior to his habeas corpus petition. (*See* Ex. B, Direct Appeal Br.; Ex. D, Direct Appeal Reply Br.; Ex. I, Pet. Relief J.; Ex. O, Pet. Relief J. Pet. Leave Appeal; Ex. Q, Postconviction Pet.; Ex. R, Supplement Postconviction Pet.; Ex. S, Second Supplement Postconviction Pet.; Ex. T, Am. Postconviction Pet.; Ex. U, Supplement Am. Postconviction

6

Pet.; Ex. V, Second Supplement Am. Postconviction Pet.; Ex. W, Third Supplement Am. Postconviction Pet.; Ex. Y, Pet'r's Reply State's Mot. Dismiss; Ex. AA, Pet'r's Postconviction Appeal Br.; Ex. CC, Pet'r's Postconviction Appeal Reply Br., Ex. DD, Pro Se Supplemental Br.; Ex. FF, Postconviction Pet. Leave Appeal, Ex. JJ, Pet'r's Br. ) Thus, Tolbert failed to provide the state courts with any opportunity to resolve this constitutional issue, and, therefore, this Court is precluded from reviewing it.

Claim 8, *i.e.*, Tolbert's appellate counsel on direct appeal was ineffective for failing to raise the above-noted issues, is also procedurally defaulted. To the extent that Tolbert even raised the ineffective assistance of appellate counsel issues he raises in his habeas petition in his postconviction petition with its full panoply of amendments and supplements, he failed to raise any of them in his appeal from the denial of the postconviction petition. (*See* Ex. AA, Br. & Argument Appellant-Pet'r at 27-57. *Cf.* Reply Br. & Argument Appellant-Pet'r; Supplemental Br. & Argument Appellant-Pet'r.) Therefore, because Tolbert did not invoke one complete round of Illinois' established appellate review process, he failed to provide the state courts with an opportunity to resolve these constitutional issues, and the Court is precluded from addressing them.

Tolbert's procedural default as to any of his habeas claims may be overlooked if he can show good cause for the default and actual prejudice resulting therefrom. *Coleman*, 501 U.S. at 750. "Good cause for default is limited to an external objective impediment that prevented the petitioner from making the claim, such as interference by state officials or unavailability of a factual or legal basis for the claim at the time of filing the habeas petition." *United States ex rel. Williams v. Winters*, No. 01 C 4664, 2004 WL 1588269, at *3 (N.D. Ill. June 22, 2001); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986).

First, the issue of a denial of effective assistance of appellate counsel as a basis for good cause for any procedural default has been waived because, as discussed above, Tolbert did not raise the issue at each stage of his postconviction proceedings. *See Murray*, 477 U.S. at 489; *Momient-El v. DeTella*, 118 F.3d 535, 541-42 (7th Cir. 1997). Second, the law is clear that Tolbert's representing himself during the postconviction proceedings does not constitute good cause for the procedural default of any of his claims. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010); *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003). Third, Tolbert has not established that there was any external objective impediment that prevented him from raising the procedurally defaulted claims during either his criminal case or the postconviction proceedings, such as interference by state officials or unavailability of a factual or legal basis for the claim.[1] Because Tolbert has not established cause for his default, the Court need not address the question of prejudice. *See Morrison v. Duckworth*, 898 F.2d 1298, 1301 (7th Cir. 1990).

Finally, even if a habeas petitioner cannot establish cause and prejudice for a procedurally defaulted claim, the federal district court may entertain it if petitioner demonstrates that the failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To demonstrate a fundamental miscarriage of justice, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish actual innocence, a petitioner must present "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324.

---

[1]With regard to Claim 6, Tolbert does not argue that a copy of the felony complaint against him was never provided to him prior to his filing of his habeas petition or that he was not present at his first state court appearance. (*See* Am. Habeas Pet. at 27.)

The court considers all of the evidence "old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," to determine whether "it was more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (quotations omitted). "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

Tolbert does not argue actual innocence. Rather, he argues that there were legal errors in the proceedings below that deprived him of his constitutional rights. Thus, he has waived this argument. Even if the Court were to hold that Tolbert properly raised this issue, which it does not, viewing the record as a whole, together with Tolbert's submissions attached to his habeas petition, which include his and his relatives' affidavits as well as an affidavit of Patrick Young, he simply has not met his burden of establishing that no reasonable jury would have convicted him in light of any new facts he presents.

## Conclusion

For the foregoing reasons, the Court denies Tolbert's petition for writ of habeas corpus. This case is hereby terminated.

**SO ORDERED**                             **ENTERED:** July 19, 2010

_____
**HON. RONALD A. GUZMAN**
**U.S. District Court Judge**